# EXHIBIT A



# MASTER SERVICE AGREEMENT
# BETWEEN
# <u>BIO-LAB, INC.</u>
# AND
# <u>CTEH, LLC.</u>

WHEREAS CTEH, LLC has been retained by Wilmer Cutler Pickering Hale and Dorr LLP ("Counsel") in connection with its advice to Bio-Lab, Inc. in an engagement letter dated xxx  (the "Engagement Letter");

WHEREAS Bio-Lab, Inc. has requested CTEH to perform emergency response services related to a fire and chlorine leak at the facility in Lake Charles, Louisiana;

WHEREAS CTEH has provided services in response to Bio-Lab's request; and

WHEREAS Bio-Lab, Inc. is responsible for the payment of all CTEH, LLC's fees for work performed pursuant to the Engagement Letter and for any other services requested by Bio-Lab or by Counsel on behalf of Bio-Lab;

The Parties agree as follows:

1. <u>PARTIES TO AGREEMENT</u>

    This Agreement is made as of <u>August 27, 2020 </u>between <u>BioLab, Inc.</u> (**CLIENT**) and Center for Toxicology and Environmental Health, L.L.C. (**CTEH®**).   This Agreement shall continue until either party terminates this Agreement as set forth in section 7 hereof.

2. <u>SCOPE OF SERVICES</u>

    It is anticipated that from time to time during the term of this agreement that CLIENT or Counsel will request CTEH® to perform industrial hygiene, emergency response, and other environmental and consulting services. If CTEH® agrees to perform the services requested by CLIENT or Counsel, they shall be performed under the terms of this Agreement and any other Scope of Work or Engagement Letter that may be executed, including any attachments which are made a part hereof for all purposes.

3. <u>COMPENSATION</u>

    A.  As compensation for all services rendered by CTEH® for CLIENT or Counsel on behalf of pursuant to this Agreement, CLIENT agrees to pay CTEH® on the basis of time and materials in accordance with the attached schedule of fees incorporated herein by reference.

    B.  All statements rendered to CLIENT by CTEH® shall indicate the number of hours worked, date worked, work performed, and such additional information as CLIENT or Counsel shall reasonably request.



C. Compensation for services provided under this Agreement shall be paid to CTEH® by CLIENT within 30 days following submission of each statement. Services not paid within thirty (30) calendar days of receipt by CLIENT will be considered overdue and shall be subject to an interest charge at a rate of one and one-half percent (1-1/2%) per month on the overdue balance or, if less, the maximum charge permitted by applicable law.

4. PERFORMANCE OF SERVICES

CTEH® will render its services at such time and places as CLIENT or Counsel may reasonably request. CTEH® shall render services only upon the specific request of CLIENT or Counsel.

CLIENT understands that the time of CTEH® employees is a principal resource from which CTEH® derives revenues. CLIENT also understands that incidents involving CLIENT operations and CTEH® services may result in litigation requiring CTEH® to spend time responding to discovery requests. Accordingly, CLIENT agrees to pay CTEH® for time and expenses incurred in discovery relating to such litigation including, without limitation, depositions, the production of documents, and consultations with CLIENT'S counsel.

5. DELAYS

The parties shall not be liable for default or delay under this Agreement caused by acts of God, or other events beyond their control. Such acts or events shall include, without limitation, storms, floods, fires, epidemics, war, riot, strikes, lockouts, or other labor disputes, and acts of the government, its agencies or officers, federal, state, or local.

6. SUSPENSION OF SERVICES

CLIENT or Counsel may suspend performance of services hereunder at any time by written notice to CTEH®. All suspensions shall extend the Agreement completion date commensurately. CLIENT shall pay CTEH® necessary and reasonable costs incurred by CTEH® directly attributable to the suspension in addition to other compensation provided for by this Agreement.

7. TERMINATION

The obligation to provide further services under this Agreement may be terminated by either party upon seven (7) calendar days written notice. In the event of any termination, CTEH® will be paid for all services rendered to the date of termination (including reasonable reimbursable expenses), and reasonable fees and expenses for any demobilization or similar expenses incurred in an orderly termination of the work.

8. ACCOUNTING AND AUDITING

CTEH® shall prepare and maintain accounting records in support of all amounts billed to CLIENT. CTEH®'s files and records directly relating to performance of this Agreement and billing therefore shall be subject to audit by CLIENT and at all times during the course of the project and for a period of three (3) years after project completion.

9. SUBCONTRACTING

2

DocuSign Envelope ID: 49CFC717-E132-4A1A-BE17-4947AC1EB99E



The services under this Agreement shall be rendered by CTEH®, and shall not be subcontracted to be performed by any other party without the prior written consent of CLIENT or Counsel.

10. <u>INDEPENDENT CONTRACTOR STATUS</u>

CTEH® shall perform its work as an independent contractor. CTEH® shall have responsibility for and control over the details of and means for performing the work assigned and shall be subject to the directions of CLIENT orCounsel only with respect to the scope of work and the general results required. Nothing in this Agreement shall be construed to make CTEH® or any of its employees or agents to be CLIENT or Counsel employees or agents.

11. <u>INDEMNIFICATION</u>

CTEH® agrees to indemnify and save harmless CLIENT and its officers, directors, employees, agents and contractors from and against any and all liabilities, losses, penalties, fines, claims, costs and expenses incidental thereto (including costs of defense, settlement, and reasonable attorneys' fees), which any or all of them may hereafter suffer, incur, be responsible for or pay out as a result of bodily injuries (including death), or property damage, or any violation or alleged violation of statutes, ordinances, laws, orders, rules or regulations caused by a negligent act or omission, or willful misconduct, of CTEH® or its employees, agents or contractors in the performance of this Agreement. CLIENTshall, within ten days of its receipt of notice, notify CTEH® in writing of any claim set forth above for which CLIENT demands indemnity, and thereafter, at CTEH®'s expense, CTEH® may assume the defense of CLIENT, provided that CLIENT shall have the right to assist in the control and management of the defense.

CLIENT agrees to indemnify and save harmless CTEH® and its officers, directors, employees, agents and contractors from and against any and all liabilities, losses, penalties, fines, claims, costs and expenses incidental thereto (including costs of defense, settlement, and reasonable attorneys' fees), which any or all of them may hereafter suffer, incur, be responsible for or pay out as a result of  (i) bodily injuries (including death), or property damage, or any violation or alleged violation of statutes, ordinances, laws, orders, rules or regulations caused by a negligent act or omission, or willful misconduct, of CLIENT or its employees, agents or contractors, or (ii) any violation of the Resource Conservation and Recovery Act, as amended, the Comprehensive Environmental Response, Compensation and Recovery Act, as amended, the Toxic Substances Control Act, as amended, and other laws and regulations relating to the mere existence, generation, ownership, transportation, or arrangement for disposal of any hazardous substances or wastes, except where such violations result from the negligent act or omission or willful misconduct of CTEH® in the performance of its services. CTEH® shall, within ten days of its receipt of notice, notify CLIENT in writing of any claim set forth above for which CTEH® demands indemnity, and thereafter, at CLIENT's expense, CLIENT may assume the defense of CTEH®, provided that CTEH® shall have the right to assist in the control and management of the defense.

In no event shall either party be liable for any incidental, special or consequential damages whatsoever (including, but not limited to lost profits or interruption of business) arising out of or related to the services provided under this Agreement, even if advised of the possibility of such damages.

12. <u>COMPLIANCE WITH APPLICABLE LAWS</u>



CTEH® shall comply with all applicable provisions of federal, state and local equal employment opportunity laws, rules, regulations and orders and with all known other applicable laws, rules, regulations and orders.

13. INSURANCE REQUIREMENTS

In addition to any other insurance which either party to this agreement may be required or choose to carry, CLIENT and CTEH® shall, at their expense, maintain in effect at all times during the performance of the Services under this Agreement insurance coverage with limits that are not less than those that are set forth below, except that CLIENT shall not be required to have professional liability insurance.

(1) Commercial General Liability Insurance - $1,000,000 per claim and $1,000,000 annual aggregate for bodily injury or death and property damage, including loss of use thereof.
(2) Comprehensive Automobile Liability Insurance covering all owned, non-owned, and hired vehicles - $1,000,000 combined single limit of liability per claim for bodily injury or death and property damage, including loss of use thereof.
(3) Statutory Workers' Compensation Insurance and Employers Liability Insurance - $1,000,000 per claim; $1,000,000 per disease per employee; and $1,000,000 per disease limit.
(4) Professional Liability Insurance, Applicable to Services - $1,000,000 with respect to each claim and $2,000,000 for all annual claims made against the Insured for negligent acts, errors, or omissions in the performance of the Services hereunder.
(5) Umbrella Liability Insurance - $1,000,000 per claim and $1,000,000 annual aggregate.

14. DISPUTE RESOLUTION

A. The parties agree that any and all court proceedings arising out of, relating to, or referencing this agreement shall be brought in, and only in, courts of Georgia. The parties further consent to the jurisdiction and venue of the courts of Georgia and waive any objection to the jurisdiction and venue thereof15. ATTORNEY'S FEES

In the event of arbitration or litigation between the parties to this Agreement, all reasonable attorneys' fees, and other costs to protect or enforce the prevailing party's rights shall be paid or reimbursed by the other party.

16. CONFLICT OF INTEREST

CLIENT acknowledges that CTEH® provides similar services for a broad range of clients and agrees that CTEH® is free to work for other clients in matters that do not involve the use of any proprietary information that has been disclosed by CLIENT to CTEH® or that do not directly relate to the specific services actually provided to CLIENT pursuant to this Agreement.

17. NON-SOLICITATION OF EMPLOYEES

18. Neither party shall solicit for employment or hire the employees of the other party involved in the management or performance of the services during the period in which this Agreement is in effect, and for a period of one year thereafter. MISCELLANEOUS

18.1 ASSIGNMENT

4

DocuSign Envelope ID: 49CFC717-E132-4A1A-BE17-4947AC1EB99E



Neither party to this agreement shall assign any rights or delegate any duties under this Agreement without the prior written consent of the other party, which shall not be unreasonably withheld.

18.2    NOTICES

Any and all notices, demands, requests, and other communications required or permitted to be served on or given to either party by the other shall be delivered personally, or by fax followed by United States Mail, certified with return receipt requested, to:

IF TO CTEH®:

CTEH, L.L.C.

5120 North Shore Drive

North Little Rock, AR 72118

Attention:  Cory Davis

Senior Vice President

(501) 801-8550

(501) 801-8551 Fax

Email: cdavis@cteh.com

IF TO CLIENT:

Bio-Lab, Inc.

910 Interstate 10 West

Westlake, Louisiana 70669

Don Brunette

(337) 433-3030

AND

Wilmer Hale
1 Front Street
Suite 3500
San Francisco, California 94111
USA

Att: Peggy Otum

If delivered personally, such notice shall be effective upon delivery in the manner specified in this Paragraph 18.2. If faxed in accordance with this Paragraph 18.2, such notice shall be effective upon the date of receipt.

18.3    WAIVER OF BREACH

5



The failure of either party to insist in any one or more instances upon performance of any terms or conditions of this Agreement is not to be construed as a waiver of future performance of any such term, covenant, or condition, but the obligations of either party with respect thereto will continue in full force and effect.  No waiver will be effective unless in writing and signed by the waiving party.

18.4     REMEDIES

In the event of the breach or threatened breach of any provision of the Agreement by either party hereto, the other party shall be entitled to injunctions, both preliminary and final, enjoining and restraining such breach or threatened breach. Such remedies shall be in addition to all other remedies available at law or in equity, including the right of either party to recover from the other party any and all damages that may be sustained as a result of a breach or threatened breach of this Agreement, subject to the limitation on incidental, special or consequential damages set forth in Section 11 hereof.

In addition to any other remedies each of the parties may have under the terms of this Agreement, each party shall be entitled to stop the other, by means of injunction, from violating any part of this Agreement and to recovery, by means of accounting, any profits the other may have obtained in violation of this Agreement.

18.5     CAPTIONS AND CONSTRUCTION

The captions used herein as headings of the various paragraphs hereof are for convenience only, and such captions are not to be construed to be part of this Agreement or to be used in determining or construing the intent or context of this Agreement.

18.6     SEVERABILITY

If any clause, sentence, provision, or other portion of this Agreement is or becomes illegal, null, void, or unenforceable for any reason, or is held by any court of competent jurisdiction to be so, the remaining portions shall remain in full force and effect.

18.7     COUNTERPARTS

This Agreement may be executed in a number of counterparts, each of which executed counterparts shall be deemed an original, and all such counterparts shall together constitute one and the same Agreement.

18.8     GOVERNING LAW

This Agreement shall be enforced in accordance with the laws of the state of Georgia, (without regard to principles of conflicts of laws) and all federal laws applicable therein..

18.9     THIRD PARTY BENEFICIARIES

There are no third parties, other than Counsel, intended to be beneficiaries of any obligation or right assumed by CTEH® or CLIENT under this Agreement.

18.10    FURTHER ASSURANCES

DocuSign Envelope ID: 49CFC717-E132-4A1A-BE17-4947AC1EB995



From time to time hereafter, and upon request, each of the parties will execute, acknowledge, and deliver such other instruments and documents and take such further actions as may be reasonably necessary to carry out the intent of this Agreement.

18.11    ENTIRE AGREEMENT

This Agreement, including the attachments hereto, is the entire agreement between CTEH® and CLIENT.  It supersedes all prior communications, understandings and agreements, whether oral or written.  Amendments to this Agreement must be in writing and signed by both CTEH® and CLIENT.

19.    FINANCIAL ASSURANCE

If at any time CTEH® deems itself in good faith to be financially insecure with respect to receipt of timely and complete payment for its past and/or future services, it may require CLIENT to pay to CTEH® a retainer sufficient to provide CTEH® with financial assurance with respect to such payment upon demonstrating to CLIENT that basis of such belief.  Such retainer shall be applied by CTEH® for services and/or invoices in the order determined by CTEH®, and will be replenished by CLIENT as necessary to maintain the amount of the retainer at an amount deemed satisfactory from time to time by CTEH®.

20.    SIGNATURES

Unless otherwise specified below, the following signatures are the authorized representatives upon whose decisions and information each party may rely in performance of this Agreement. Any information or notices required or permitted hereunder shall be deemed to have been sufficiently given to either party if given to these signatories or to such other parties and/or address as they may subsequently designate.

This Agreement is effective the day and year written in Article No. 1.

| | | |
|---|---|---|
| Parties: | CTEH, L.L.C. | Bio-Lab, Inc. |
| By: | Cory Davis | By:  Don Brunette |
| Signature: | *Cory Davis* (DocuSigned, 147504BD5388475...) | Signature: *Don Brunette* (DocuSigned, 03E0E8CCF5CA472...) |
| Title: | Senior Vice President | Plant Manager |
| Date: | 9/8/2020 | 9/5/2020 |

7



8